United States District Court
Southern District of Texas
**ENTERED**
October 02, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GRACIE CAVAZOS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:22-CV-01347 |
| | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Gracie Cavazos seeks review of the Commissioner of Social Security's (the "Commissioner") decision to deny her application for supplemental security income under Title XVI of the Social Security Act ("SSA"). The parties have cross-moved for summary judgment. Cavazos argues that the administrative law judge ("ALJ") erroneously denied her application because the ALJ's determination as to the severity of her impairments relied on an incorrect legal standard and was unsupported by substantial evidence. She further alleges that the ALJ failed to adequately develop the record. After careful review, Plaintiff Gracie Cavazos's Motion for Summary Judgment, (Dkt. No. 8), is **GRANTED** and Defendant's Cross-Motion for Summary Judgment, (Dkt. No. 9), is **DENIED**.

### I. BACKGROUND

In May 2020, Gracie Cavazos applied for supplemental security income, (Tr. 176–85), alleging disability beginning back in May 2010. (Tr. 217). In her initial application, Cavazos claimed that a myriad of conditions—both physical and mental—limited her

ability to work.  Her physical disabilities included kidney problems and arm problems.  (Tr. 210).  As for mental disabilities, she listed schizophrenia, bipolar disorder, and depression.  (*Id.*).  Cavazos reported that due to these physical and mental disabilities, she experienced various exertional and non-exertional limitations, including difficulty lifting, squatting, bending, standing, walking, sitting, kneeling, hearing, and climbing stairs, as well as difficulty with memory, concentration, and being around others.[1]  (Tr. 225).  She additionally touched briefly upon various physical and mental issues at the hearing.[2]

Cavazos's application was denied initially and again upon reconsideration.  (Tr. 99, 106).  She then filed a claim with the Social Security Administration, wherein the ALJ rendered an unfavorable decision on October 1, 2021.  (Tr. 21).  Cavazos requested review of the ALJ's decision by the Appeals Counsel (the "Counsel"), but the Counsel denied this request.  (Tr. 1).  The ALJ's holding therefore became a final decision appealable through a civil action filed in the federal judicial district where the claimant lives.  42

---

[1]  For the purposes of social security and disability determinations, limitations are classified as exertional, non-exertional, or a combination of both.  20 C.F.R. § 404.1569a(a).  Exertional limitations are those that restrict physical strength and affect the individual's remaining ability to perform each of seven strength demands: sitting, standing, walking, lifting, carrying, pushing, and pulling.  *Id*.  An exertional limitation is "an impairment-caused limitation of any one of these activities."  SSR96-9P (S.S.A.), 1996 WL 374185, at *5 (July 2, 1996).  Non-exertional limitations are those that are not exertional, such as mental abilities, vision, hearing, speech, climbing, balancing, stooping, kneeling, crouching, crawling, reaching, handling, fingering, and feeling.  Environmental restrictions are also considered to be non-exertional.  *Id.*

[2]  On her physical issues, she offered that she had a tumor in her arm and in front of her vaginal area, suffered from arthritis, could barely walk, and always felt weak and tired with difficulty sleeping.  (Tr. 41, 47).  Elaborating on her mental issues, she briefly discussed her cognitive decline, past suicidal tendencies, present struggles with childhood trauma, stress and depression, and issues with audiovisual hallucinations.  (Tr. 41–46).

U.S.C. § 405(g). In her present appeal, Cavazos makes two primary arguments. She first argues that the agency's determination as to the severity of her impairments relies on an erroneous legal standard and is unsupported by substantial evidence. (Dkt. No. 8-1 at 6–9). Second, Cavazos argues that, because the ALJ did not order a consultative examination to assess her mental limitations, the agency failed to properly develop the record. (*Id.* at 9–12).

## II. STANDARD OF REVIEW

As the factfinder, the ALJ "has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record." *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) (per curiam). Courts can neither make credibility determinations nor re-weigh the evidence. *Randall v. Astrue*, 570 F.3d 651, 662 (5th Cir. 2009) (per curiam). This Court's review is limited to determining whether the agency applied the proper legal standard and, if so, whether substantial evidence supports its decision. *Higginbotham v. Barnhart*, 405 F.3d 332, 335 (5th Cir. 2005). "Substantial evidence is more than a scintilla, less than a preponderance, and is such that a reasonable mind might accept it as adequate to support a conclusion." *Randall*, 570 F.3d at 662 (internal quotation marks omitted) (quoting *Randall v. Sullivan*, 956 F.2d 105, 109 (5th Cir. 1992)). A finding of "no substantial evidence" occurs "only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Johnson v. Bowen*, 864 F.2d 340, 343–44 (5th Cir. 1988) (per curiam) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

**III.   LEGAL STANDARD**

In evaluating a disability claim for supplemental security income, the Commissioner employs a five-step evaluation process that assesses whether: (1) the claimant is presently engaged in substantially gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals one listed in appendix 1 of the social security regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other substantially gainful activity.  20 C.F.R. § 416.920(a)(4); *see also Muse*, 925 F.2d at 789.  If, at any point in the five-step review, the ALJ finds that a claimant is not disabled, such finding "is conclusive and terminates the analysis."  *Randall*, 570 F.3d at 653 (quoting *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987)).

With respect to step two of the analysis, Section 416.922(a) defines an impairment as non-severe "if it does not significantly limit your physical or mental ability to do basic work activities."  But the Fifth Circuit has consistently adopted a construction of this language that reflects a lower bar for severity than what the regulatory language might ostensibly suggest, deeming an impairment to be non-severe "only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience."  *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985) (internal quotations omitted) (alteration in original).

## IV. DISCUSSION

In the October 1, 2021 decision, the ALJ acknowledged the disabilities Cavazos alleged in the Disability Report, her account of her limitations in the Function Report, and the elaboration on her impairments that she offered at the hearing. (Tr. 16–17). The ALJ discussed her medical history, including her surgical procedures in September 2018, assessment by a psychiatry resident in January 2020, hospitalization in June 2020, emergency medical care in July 2020, consultative examination in February 2021, and emergency medical care in June 2021. (Tr. 17–19). The ALJ also noted the findings of state agency consultants, including those offered on reconsideration of her disability claim. (Tr. 19). Based on the record, the ALJ determined that Cavazos had the following medically determinable impairments: mood disorder, panic attacks, left arm lipoma, hepatitis C, kidney infection, a right adnexal mass, history of seizure disorder, and right hydronephrosis. (Tr. 15). However, the ALJ determined that none of these impairments rose to the level of being "severe" for step two purposes. (*Id.*). The ALJ therefore did not evaluate steps three through five of the sequential process. (*See* Tr. 20–21). The Court considers whether the ALJ applied the correct legal standard, and then whether substantial evidence supports the ALJ's decision.

### A.   WHETHER THE ALJ APPLIED THE CORRECT LEGAL STANDARD

Among her contentions, Cavazos raises a *Stone* challenge in arguing that the ALJ committed legal error at the second step by applying the wrong standard when assessing the severity of her impairment. (Dkt. No. 8-1 at 6). The Commissioner does not directly respond to this challenge. (*See* Dkt. No. 10).

The relevant regulation on the severity of impairments prescribes: "An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. § 416.922(a). However, the Fifth Circuit has consistently held that this regulatory requirement is inconsistent with how the Social Security Administration defines disability. *See, e.g.*, *Keel v. Saul*, 986 F.3d 551, 555–56 (5th Cir. 2021) (quoting *Stone*, 752 F.2d at 1101). "An impairment can be considered as not severe only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone*, 752 F.2d at 1101 (cleaned up). Stated in the positive, an impairment is severe if it is more than a "slight abnormality" that "would not be expected to interfere" with a claimant's ability to work. This step requires only that the claimant make a de minimis showing. *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018).

When the ALJ's decision is based on nonseverity, the ALJ must apply the standard set forth in *Stone*. 752 F.2d at 1106. The ALJ must provide some indication that they applied *Stone* or an equivalent authority. *Keel*, 986 F.3d at 555. Social Security Ruling (SSR) 85-28, which includes language similar but not wholly identical to *Stone*, "comports with" the *Stone* standard.[3] *Id.* at 556. Of course, beyond ensuring that the ALJ cited to the correct standard, courts must ensure that the ALJ also correctly applied that standard.

---

[3] SSR 85-28 considers impairments to be non-severe if "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered[.]" SSR 85-28 (S.S.A.), 1985 WL 56856, at *3 (Jan. 1, 1985).

*Hampton v. Bowen*, 785 F.2d 1308, 1311 (5th Cir. 1986) ("We remand only where there is no indication the ALJ *applied* the correct standard." (emphasis added)).  The Fifth Circuit and the district courts within the Circuit have consistently remanded where the ALJ relied on the "significantly limit" language from the regulation rather than the *Stone* standard.  *See, e.g., id.* at 1311 (remanding case where ALJ used the "significantly limit" language rather than "minimal effect" language); *accord Cardona v. Kijakazi*, No. 3:21-CV-00142, 2022 WL 16953665, at *4 (W.D. Tex. Nov. 14, 2022) (holding that the ALJ erred in using the "significantly limit" language because an impairment that does not meet that threshold might still be severe under *Stone* or SSR 85-28); *Hall v. Saul*, 2:20-CV-00128, 2022 WL 1417109, at *2–3 (S.D. Miss. Mar. 23, 2022) (same).

Here, the ALJ cited to both proper and improper severity standards.  The ALJ cited to the "significantly limits" standard in 20 C.F.R. § 416.922, which does not comport with *Stone*, and to SSR 85-28, which does.  (Tr. 14–20); *compare Hampton*, 785 F.2d at 1311 *with Keel*, 986 F.3d at 556.  The substance of the ALJ's application, however, reveals that the ALJ applied the wrong standard.  The ALJ consistently comes back to the "significantly limits" standard throughout the decision and makes unmistakably clear that it is the standard against which the ALJ weighed the evidence.[4]  (Tr. 14–20).  Had the ALJ applied the correct, less demanding "minimal effects" standard, the ALJ might have reached a

---

[4] The ALJ uses the phrase "significantly limits" eight times in the decision, each in the context of defining or referencing what constitutes a severe impairment.  (*See, e.g.*, Tr. 20) ("[T]he claimant's physical and mental impairments, considered singly and in combination, do not significantly limit the claimant's ability to perform basic work activities. Thus, the claimant does not have a severe impairment or combination of impairments.").

different conclusion.  In light of this error, remand is appropriate.  *Keel*, 986 F.3d at 555–56.

    **B.**    **WHETHER SUBSTANTIAL EVIDENCE SUPPORTS THE ALJ'S DECISION**

Cavazos argues that the ALJ erred in concluding that she did not have a severe impairment despite her litany of physical and mental impairments.  (Dkt. No. 8-1 at 6–9).  In light of the Court's determination that the ALJ did not apply the correct legal standard, this contention is not ripe at the moment.  The Court need not opine on whether there is sufficient evidence to support a conclusion that is based on an incorrect, heightened standard, especially here where the analysis did not proceed beyond step two.  Remand is appropriate, at which point the ALJ must employ the correct legal standard.

    **C.**    **WHETHER THE ALJ FAILED TO DEVELOP THE RECORD**

Cavazos finally contends that the ALJ, by failing to order a psychological consultative examination, did not adequately develop the record as legally required.  (Dkt. No. 8-1 at 9–12).  According to Cavazos, the ALJ did not have sufficient facts to make an informed decision, and therefore the ALJ's decision was necessarily unsupported by substantial evidence.  (*Id.* at 9).  Since this issue will still linger on remand if left unresolved, and the ALJ's reliance on an erroneous legal standard does not bear on this issue, the Court addresses it now.[5]

---

    [5]    This inquiry looks to whether the ALJ had sufficient evidence related to non-exertional impairments to make a decision, not the impact of those impairments on the claimant's ability to work.

An ALJ typically enjoys discretion as to whether to order a consultative examination. *See Jones v. Bowen*, 829 F.2d 524, 526 (5th Cir. 1987) (per curiam). However, an ALJ must order a consultative examination "when such an evaluation is necessary to enable the ALJ to make the disability determination." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996). Such examination is necessary only when the claimant presents evidence sufficient to raise a suspicion concerning a non-exertional impairment. *Id.*

Cavazos's contention here is peculiar because there is no indication in the record that at any point leading up to or during the hearing did she seek a consultative exam. In fact, the record appears to reflect that at multiple times before the hearing, the agency had actually offered Cavazos a consultative exam.[6] Cavazos apparently did not show up to these exams despite indicating that she would. (Tr. 71) (noting, in her Disability Determination Explanation at the reconsideration level, that there was insufficient evidence because of her "failure to report to [a] consultative exam"). After multiple no-shows, Dr. Cynthia Cotton performed a consultative exam based only "on the current evidence in file because [Cavazos] did not attend the medical examination [the agency] asked [Cavazos] to have at [the agency's] expense." (Tr. 105). By all appearances, Cavazos had no issue with the sufficiency of the record evidence until the ALJ rendered an unfavorable decision based on the available evidence. At that point, she raised this

---

[6] The agency scheduled a consultative exam for at least five separate dates: September 30, 2020, October 12, 2020, February 9, 2021, February 22, 2021, and March 8, 2021. Each time, Cavazos responded that she would attend by checking the box, "I will attend the medical appointment scheduled for my Social Security claim." (Tr. 242, 256, 273, 274, 279).

9

contention—first to the Council and now to this Court. (Tr. 331–32); (Dkt. No. 8-1 at 9–12).

In *Robinson v. Barnhart*, the Fifth Circuit affirmed the ALJ's decision to not order a consultative exam, in part "because the claimant [did not request] a consultative evaluation[.]" 183 F. App'x 451, 455 (5th Cir. 2006). The Fifth Circuit reached a similar conclusion in *Brock*, where the claimant referenced the impairments at issue for the first time after the hearing. 84 F.3d at 728. Here, while Cavazos had consistently raised her mental impairments before the agency,[7] she did not request a consultative exam at or leading up to the hearing. In *Irwin v. Colvin*, a Florida district court faced similar facts. No. 8:12-CV-01025, 2013 WL 4804722 (M.D. Fla. Sept. 9, 2013). There, the agency had similarly set up a consultative exam for the claimant, and the claimant did not show up; the court rejected the notion "that it was the Commissioner's responsibility to attempt to make a second appointment for [the claimant] once he missed his first appointment." *Id.* at *3. When an applicant for benefits does not have "a good reason for failing or refusing to take part in a consultative examination," the agency "may find that [the claimant is] not disabled[.]" 20 C.F.R. § 404.1518(a). This Court finds the Florida district court persuasive, as to hold otherwise—that a claimant may elect to forego agency-directed

---

[7] In her initial application, she listed schizophrenia, bipolar disorder, and depression. (Tr. 210). Cavazos reported in her Function Report that she struggled with her hearing, memory, concentration, and ability to be around others. (Tr. 225). At the hearing, Cavazos alluded to a number of mental health issues. The ALJ additionally asked Cavazos if she took any medication for mental health reasons, to which she answered that she was supposed to be but could not afford it. (Tr. 42–43).

exams and later feign injustice for not having received one—would be inequitable and contravene the purpose of the process.

It is true that an ALJ must order a consultative examination "when such an evaluation is necessary to enable the ALJ to make the disability determination." *Brock*, 84 F.3d at 728. But that obligation is surely satisfied when the record before the ALJ indicates that the agency afforded ample opportunities for a consultative exam and the claimant failed to show up. In sum, the ALJ did not err by failing to order a psychological consultative examination. On remand, however, the ALJ is free to order a consultative examination, even if not required, if the ALJ believes that such an examination is necessary to reach an informed decision.

## V. CONCLUSION

For the foregoing reasons, the Court concludes that while the ALJ did not err in failing to order a psychological consultative examination, the ALJ committed reversible error by employing an incorrect legal standard. The Court **GRANTS** the Plaintiff's Motion for Summary Judgment. (Dkt. No. 8). The Court **DENIES** Defendant's Cross-Motion for Summary Judgment. (Dkt. No. 9). The Court **REMANDS** this case to the ALJ for further consideration consistent with this Memorandum Opinion and Order.

It is SO ORDERED.

Signed on September 29, 2023.

_____
**DREW B. TIPTON**
**UNITED STATES DISTRICT JUDGE**